UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____
TERRI L. NELSON,

                        Plaintiff,

                                                                                          Civ. Action No.

vs.                                                                                     5:09-CV-00909

                                                                                     (LEK/GHL)

MICHAEL J. ASTRUE,
*Commissioner of Social Security*,

                        Defendant.
_____

APPEARANCES:                                            OF COUNSEL:

OLINSKY & SHURTLIFF                        JAYA SHURTLIFF, ESQ.
*Counsel for Plaintiff*
300 South State Street, Suite 520
Syracuse, NY 13202-2060

SOCIAL SECURITY ADMINISTRATION        PETER W. JEWETT, ESQ.
Office of the Regional General Counsel          Special Assistant U.S. Attorney
*Counsel for Defendant*
26 Federal Plaza - Room 3904
New York, NY 10278

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION[1]

**I.**      **BACKGROUND**

      **A.**      **Procedural History**

On September 15, 2005, Plaintiff Terri L. Nelson protectively applied for supplemental security income ("SSI"). Administrative Transcript ("T") 53-55. On October 7, 2008,[2] a hearing was held before an Administrative Law Judge ("ALJ"). T 311-334. On December 9, 2008, a

---

[1] This matter was referred to me for report and recommendation by the Honorable Lawrence E. Kahn, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3.

[2] It is unclear why more than three years passed from the date that Plaintiff protectively filed her application to the date of the first hearing.

second hearing was held before the ALJ. T 335-364. On February 11, 2009, the ALJ determined that Plaintiff was not disabled. T 13-27.

Plaintiff appealed to the Appeals Council. T 10. On July 17, 2009, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. T 4-7. Plaintiff commenced this action on August 7, 2009. Dkt. No. 1.

### B. The Contentions

Plaintiff makes the following claims:

1. The ALJ erred at step two when he failed to find that Plaintiff's obesity and "lateral subluxation of patellas bilaterally with use of cane" were severe impairments. Dkt. No. 10 at 16-19.

2. The ALJ failed to use the "special technique" when evaluating Plaintiff's mental impairment. Dkt. No. 10 at 22.

3. The ALJ failed to apply the appropriate legal standards in evaluating Plaintiff's Residual Functional Capacity ("RFC") and in developing the record. Dkt. No. 10 at 19-23.

4. The ALJ failed to apply the appropriate legal standards in evaluating Plaintiff's credibility. Dkt. No. 10 at 23-24.

5. The ALJ erred at step five when he found that Plaintiff was not disabled using the framework of the Medical-Vocational Guidelines. Dkt. No. 10 at 24-25.

Defendant disagrees, and argues that the decision should be affirmed. Dkt. No. 12.

## II. APPLICABLE LAW

### A. Standard for Benefits

To be considered disabled, a plaintiff seeking disability insurance benefits or supplemental security income benefits must establish that he is "unable to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. §§ 405(a), 1383(d)(1)), the Social Security Administration ("SSA") has promulgated regulations establishing a five-step sequential evaluation process to determine disability.  20 C.F.R. § 404.1520.  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

> At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity."  [20 C.F.R.] §§ 404.1520(b), 416.920(b).  At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  [20 C.F.R.] §§ 404.1520(c), 416.920(c).  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies.  [20 C.F.R. §§] 404.1520(d), 416.920(d).  If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled.[] If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.[]  [20 C.F.R.] §§ 404.1520(f), 404.1560(c), 416.920(f), 416.9630(c).

3

*Barnhart v. Thomas*, 540 U.S. at 24-25 (footnotes omitted).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *See Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002). If the plaintiff-claimant meets his or her burden of proof on all four steps, the burden then shifts to the defendant-Commissioner to prove that the plaintiff-claimant is capable of performing other jobs which exist in significant numbers in the national economy. *Id.*

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986. In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587-88 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams o/b/o Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197

(1938)). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983).

### III.   THE PLAINTIFF

Plaintiff, who was forty-two years old at the time of the second hearing, completed the tenth grade. T 341-43. She also completed some vocational training for "book[-]keeping/accounting." T 343. Plaintiff is married. *Id.* She lives in an apartment. T 340.

Plaintiff alleged a disability onset date of July 29, 2004. T 343-44. Plaintiff worked briefly as an assembly line worker, janitor, and cashier. T 67, 343-45, 347.

Plaintiff claims disability due to multiple sclerosis, arthritis, and asthma. T 66. She also claims that she has "problems" with her eyes, and experiences depression and pain in her low back, feet, knees, and hands. T 348, 351.

### IV.   THE ALJ'S DECISION

In determining that Plaintiff was not disabled, the ALJ made the following findings:

1. Plaintiff had not engaged in substantial gainful activity since the date she applied for benefits. T 18.

2. Plaintiff's multiple sclerosis and affective disorder were severe impairments. T 18-22.

3. Plaintiff did not have an impairment or combination of impairments that met or

       medically equaled a listed impairment.  T 22.

4. Plaintiff had the RFC to perform a limited range of light work.  T 23-25.

5. Considering Plaintiff's age, education, lack of significant past work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  Thus, Plaintiff was not disabled.  T 25- 26.

## V.   DISCUSSION

### A.   Severity

Plaintiff argues that the ALJ erred by failing to find that her obesity and lateral subluxation of patellas were severe impairments.  Dkt. No. 10 at 16-19.  Defendant argues that the ALJ committed no such errors.  Dkt. No. 12 at 4, 7.

As stated above, step two of the sequential evaluation process requires a determination as to whether the claimant has a severe impairment which significantly limits the physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b).

An impairment is severe if it causes more than minimal functional limitations.  20 C.F.R. § 416.924(c).  Age, education, and work experience are not evaluated in determining if the impairment or combination of impairments are severe.  20 C.F.R. § 416.920(c).  The severity analysis does no more than "screen out *de minimis* claims."  *See Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995) (citations omitted).  If the disability claim rises above the *de minimis* level, then further analysis is warranted.  *See id.*

### 1.   Obesity

Plaintiff argues that the ALJ erred by failing to find that her obesity was a severe

impairment. Dkt. No. 10 at 16. She notes that she is 5'4" and weighs 208 pounds, and points to records which indicate that she was diagnosed as obese. *Id.* at 17. Plaintiff also argues that her fatigue, knee pain, and depression show that her obesity is a severe impairment. *Id.* at 18.

Defendant first points out that Plaintiff did not claim obesity as a disabling impairment when she first applied for benefits. Dkt. No. 12 at 4. He also points out that Plaintiff's counsel never raised obesity at the second hearing when asked to describe her health. *Id.* (citing T 348-59). He further argues that Plaintiff never mentioned how her weight affected her ability to perform basic work activities. *Id.* Lastly, Defendant points out that Plaintiff's activities of daily living belie the notion that her weight significantly limited her ability to perform basic work activities. *Id.* at 5.

Here, the ALJ determined that Plaintiff's obesity was not severe. In making this determination, the ALJ thoroughly reviewed the evidence, which gives no indication that Plaintiff's weight significantly limited her ability to do basic work activities. T 18-22. Moreover, as Defendant points out, Plaintiff did not allege obesity as an impairment when she applied for disability benefits. T 66. It is the claimant's responsibility to identify and provide evidence establishing an impairment as well as severity. 20 C.F.R. §§ 404.1512(c), 416.912(c); *see also*, *e.g.*, *Gray v. Chater*, 903 F. Supp 293, 297 (N.D.N.Y. 1995) (citing *Rivera v. Schweiker*, 717 F.2d 719, 722 (2d Cir. 1983)). Further, during her hearing testimony, Plaintiff never cited obesity as a reason why she was unable to work. T 335-64.

To the extent that Plaintiff appears to argue that her height and weight, alone, automatically required a finding that Plaintiff's obesity was a severe impairment, Dkt. No. 12 at 19, "[t]here is no specific level of weight or [body mass index] that equates with a 'severe' or a 'not severe' impairment." SSR 02-1p, 2000 WL 628049, at *4 (S.S.R. Sept. 12, 2002).

In light of the foregoing, the ALJ's determination that Plaintiff's obesity was not severe was supported by substantial evidence. Therefore, I recommend that the matter in this regard be affirmed.

### 2. Lateral Subluxation of Patellas

Plaintiff argues that the ALJ erred by failing to find that Plaintiff's lateral subluxation of patellas (dislocation of the knee caps) was a severe impairment. Dkt. No. 10 at 19. In contrast, Defendant argues that the ALJ made no such error. Dkt. No. 12 at 5.

Here, the ALJ determined that Plaintiff's lateral subluxation of patellas was not severe, which is somewhat perplexing in light of the following: Plaintiff specifically stated at the second hearing that she experienced right knee pain and chronic pain in her legs. T 348, 350. Moreover, while Defendant points out that Dr. Ganesh opined in 2006 that Plaintiff had no limitation to sitting, standing, or walking, Dkt. No. 12 at 5, Dr. Ganesh opined in 2008 that Plaintiff had *moderate limitations* in standing, *walking*, or climbing. T 193, 283. Further, the record is replete with various sources noting Plaintiff's complaints of knee pain, and diagnosing her as suffering from right knee pain. *See* T 251, 253, 283, 300. Lastly, an x-ray showed "lateral subluxation of both knee caps." T 127.

To the extent that Defendant points out that at one point Plaintiff reported that she used no cane, I note that Plaintiff reported this information shortly after she applied for benefits on December 5, 2005. T 80, 81. She later reported at the second hearing on December 9, 2008, that she did, in fact, use a cane, which was prescribed by a physician.[3] T 357.

---

[3] Defendant argues that the physician prescribed the cane "as a result of her [multiple sclerosis], not because of a knee impairment." Dkt. No. 12 at 5. However, Plaintiff stated that her physician prescribed the cane "for my balance." T 357. Therefore, it is somewhat unclear why the

In any event, the Court is unable to conclude that the ALJ's finding of non-severity was supported by substantial evidence. The foregoing evidence suggests that Plaintiff's knees caused more than minimal functional limitations. Therefore the matter should be remanded.

**B.     Use of Special Technique**

Plaintiff argues that the ALJ erred by failing to complete the required "special technique" used when evaluating the severity of a mental impairment. Dkt. No. 10 at 22. Defendant argues that the ALJ properly evaluated Plaintiff's mental impairment. Dkt. No. 12 at 7.

When evaluating the severity of mental impairments, the regulations require the ALJ to apply a "special technique" at the second and third steps of the review, in addition to the customary sequential analysis. *Kohler v. Astrue*, 546 F.3d 260, 265-66 (2d Cir. 2008) (citing 20 C.F.R. § 404.1520a).

The special technique first requires a determination of whether the Plaintiff has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). Then, the ALJ must rate the degree of Plaintiff's functional limitation resulting from the impairment in four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *See* 20 C.F.R. § 404.1520a(c)(3). These areas are rated on a scale of "none, mild, moderate, marked, and extreme." 20 C.F.R. §§ 404.1520a(c)(4); 416.920a(c)(4). A finding of marked limitations in two or more of the areas will generally establish that the claimant is disabled. *Paratore v. Comm'r of Social Security Admin.*, No. 05-CV-1356, 2008 WL 541156, at *5 (N.D.N.Y. Feb. 25, 2008).

Here, the ALJ found that Plaintiff had a "mental impairment." T 22. He then specifically

---

cane was prescribed.

9

discussed each of the four functional areas of the special technique. *Id.* The ALJ found that Plaintiff had a mild restriction in activities of daily living; mild difficulties in social functioning; moderate difficulties in concentration, persistence, or pace; and no episodes of decompensation. *Id.* The ALJ reviewed the relevant evidence, including reports from Dennis Noia, Ph. D., and Kristen Barry, Ph. D., both consultative psychologists. T 19, 21. Both of these reports support the ALJ's findings.

Thus, the ALJ applied the special technique. His evaluation was supported by substantial evidence. Accordingly, the matter in this regard should be affirmed.

### C.     Credibility

Plaintiff argues that the ALJ erred by failing to credit her subjective testimony regarding the "intensity, persistence, and limiting effects of [her] symptoms," and that the ALJ failed to apply the appropriate legal standards in evaluating her credibility. Dkt. No. 10 at 23-24. Defendant argues that the ALJ properly evaluated Plaintiff's subjective complaints. Dkt. No. 12 at 10-11.

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, Civ. No. 96-9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)).

To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. 20 C.F.R. § 404.1529; *see also Foster v. Callahan*, Civ. No. 96-1858, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998). First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments

10

"could reasonably be expected to produce the pain or other symptoms alleged . . . ." 20 C.F.R. § 404.1529(a). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which they limit the claimant's capacity to work. 20 C.F.R. § 404.1529(c). When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. § 404.1529(c)(3). An ALJ's evaluation of a plaintiff's credibility is entitled to great deference if it is supported by substantial evidence. *Murphy v. Barnhart*, No. 00-9621, 2003 WL 470572, at *10 (S.D.N.Y. Jan. 21, 2003) (citations omitted)).

Here, the ALJ's assessment of Plaintiff's credibility is unclear. The ALJ appears to find Plaintiff credible only to the extent that her allegations supported his RFC determination. T 25 ("[T]he claimant's statements concerning the intensity, persistence and limiting effects of [the alleged] symptoms are not credible to the extent they are inconsistent with the [RFC] assessment."). However, under the regulations, the ALJ must consider Plaintiff's symptoms "and the extent to which [her] symptoms [could] reasonably be accepted as *consistent with the objective medical evidence and other evidence*." 20 C.F.R. § 404.1529(a) (emphasis added). Therefore, the propriety

11

of the ALJ's finding that Plaintiff was credible only to the extent that her statements were consistent with his own RFC determination is questionable.

In any event, the ALJ failed to indicate the weight he gave to Plaintiff's statements. As noted, he vaguely stated that Plaintiff was credible to the extent that her allegations were consistent with the RFC determination. An ALJ's decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the ALJ gave to the individual's statements and the reasons for that weight. SSR 96-7p, 1996 WL 374186, at *2 (S.S.A. July 2, 1996). Here, the ALJ's decision is not sufficiently specific to make clear to this Court what weight the ALJ gave to Plaintiff's statements.

Moreover, the ALJ failed to discuss the required factors set forth in the regulations. Instead he vaguely stated that the "description of the symptoms and limitations which the claimant has provided throughout the record has generally been inconsistent and unpersuasive." T 25. However, the ALJ failed to identify what statements were inconsistent and unpersuasive.

The ALJ also stated that the "[p]rior medical records show that the claimant is apparently able to care for young children at home, which can be quite demanding both physically and emotionally, without any particular assistance." T 25. However, the ALJ fails to identify to which medical records he refers. Moreover, the ALJ simply speculates as to the demands of caring for Plaintiff's children.

Further, the ALJ cited Plaintiff's "generally unpersuasive appearance and demeanor while testifying at the hearing." T 25. The ALJ failed to explain this statement. Thus, it is unclear how Plaintiff's appearance and demeanor were "generally unpersuasive."

In light of the foregoing, the Court is unable to find that the credibility determination was supported by substantial evidence. Therefore, the matter should be remanded in order for the ALJ to properly analyze Plaintiff's credibility.

### D.  Residual Functional Capacity

Plaintiff argues that the ALJ's RFC determination was not supported by substantial evidence. Dkt. No. 10 at 19-23. Defendant argues that the RFC finding was supported by substantial evidence. Dkt. No. 12 at 6.

A claimant's RFC represents a finding of the range of tasks he or she is capable of performing despite his or her impairments. 20 C.F.R. § 404.1545(a). An RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomatology, including pain, and other limitations that could interfere with work activities on a regular and continuing basis. *Id.; Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (Hurd, J.).

To properly ascertain a claimant's RFC, an ALJ must assess a claimant's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push and pull. 20 C.F.R. § 404.1569a. Non-exertional limitations or impairments, including impairments that result in postural and manipulative limitations, must also be considered. 20 C.F.R. § 404.1569a; *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e). When making an RFC determination, an ALJ must specify those functions that the claimant is capable of performing; conclusory statements concerning his or her capabilities, however, will not suffice. *Martone*, 70 F. Supp. 2d at 150.

Here, the ALJ found that Plaintiff had the RFC to perform simple, low stress work with no complex tasks (as defined in 20 C.F.R. § 416.967(b)), except she is capable of lifting and/or carrying 20 pounds occasionally and 10 pounds frequently; standing and/or walking about 6 hours in

an 8-hour workday; sitting about 6 hours in an 8-hour workday with unlimited pushing/pulling; and no postural, manipulative, or visual limitations, but she should avoid working in concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc.  T 23.

### 1. Difficulty Ambulating and Use of Cane

Plaintiff argues that the RFC determination fails to consider Plaintiff's "difficulty with ambulation and required use of a cane."  Dkt. No. 10 at 19.  As noted, the RFC determination provides that Plaintiff was capable of walking about 6 hours in an 8-hour workday and makes no provision for the use of a cane.  T 23.

In making the RFC determination, the ALJ stated that this determination was supported by Dr. Ganesh's more recent opinion from 2008.  T 24.  However, as noted, *Dr. Ganesh opined that Plaintiff had a moderate limitation in walking and that Plaintiff needed her cane on an as-needed basis*.  T 283.  Thus, it is unclear how Dr. Ganesh's opinion supports the ALJ's finding that Plaintiff was capable of walking about 6 hours in an 8-hour workday with no cane.  Moreover, I note that the ALJ failed to state the weight he afforded this opinion.  Instead he vaguely stated that this opinion "supported" the RFC determination.

In light of the foregoing, the Court is unable to find that the RFC determination is supported by substantial evidence.  Moreover, to the extent that the ALJ discounted Plaintiff's subjective complaints of knee pain while making the RFC determination, as noted, the ALJ failed to properly evaluate Plaintiff's credibility.  Accordingly, the matter in this regard should be remanded.

### 2. Duty to Develop the Record

Plaintiff argues that the ALJ failed to fully develop the record by making no reasonable effort to obtain an RFC assessment from a treating source.  Dkt. No. 10 at 20-21.  Defendant argues

that Plaintiff had opportunities to submit new evidence, such as an RFC assessment from a treating source, but "neglected the opportunity to do so" even after the ALJ notified Plaintiff that the record lacked a medical source statement from a treating physician. Dkt. No. 12 at 9-10. Defendant also argues that there was no need for the ALJ to contact a treating physician because there were no gaps in the record. *Id.* at 9-10.

      An ALJ, unlike a trial judge, must affirmatively develop the record in light of the "essentially non-adversarial nature of a benefits proceeding," even if the claimant is represented by counsel. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999) (quoting *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) and *Echevarria v. Secretary of Health and Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982)). The duty of an ALJ to develop the record is "particularly important" when obtaining information from a claimant's treating physician due to the "treating physician" provisions in the regulations. *Devora v. Barnhart*, 205 F. Supp. 2d 164, 172 (S.D.N.Y. 2002). The regulations thus provide that, "[w]hen the evidence we receive from your treating physician . . . is inadequate for us to determine whether you are disabled, . . . [w]e will first recontact your treating physician . . . to determine whether the additional information we need is readily available." 20 C.F.R. §§ 404.1512(e), 416.912(e). Moreover, "[t]here is ample case law suggesting that an ALJ has an independent duty to make reasonable efforts to obtain a report prepared by a claimant's treating physician in order to afford the claimant a full and fair hearing." *Devora*, 205 F. Supp. 2d at 174 (collecting cases).

      The record shows that on August 12, 2008, the ALJ's case technician sent Plaintiff blank copies of medical source statements and requested that Plaintiff contact her treating doctors in order for the doctors to complete the statements. T 120. The ALJ later notified Plaintiff's counsel that he

15

would leave open the record until January 22, 2009, for the submission of medical statements from treating sources. T 33, 34, 124. No medical source statements were received by the ALJ, which he discussed in the section devoted to Plaintiff's RFC. T 24. The ALJ stated the following:

> Given the claimant's allegations of totally disabling symptoms, once might expect to see some indication in the treatment records of restrictions placed on the claimant by the treating doctor. *Yet a review of the record in this case reveals no significant restrictions recommended by the treating doctors.*

*Id.* (emphasis added).

Defendant argues that the aforementioned statements were made in reference to Plaintiff's credibility. Dkt. No. 12 at 10. Whether or not the ALJ referred to Plaintiff's credibility, the ALJ was duty-bound to develop the record by contacting Plaintiff's treating physicians, particularly in light of the fact that there were no detailed functional assessments in the record from any treating physician. *See* 20 C.F.R. § 404.1512(e)(1) ("We may . . . request[] . . . a more detailed report from your medical source, including your treating source."). An opinion from a treating physician is of particular import since his or her opinion is entitled to controlling weight as long as it is well supported and consistent with other substantial evidence. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The ALJ failed to fulfill this duty by making no such contact. Accordingly, this matter should be remanded in order for the ALJ to contact the treating physicians for more detailed opinions.

### E. Medical-Vocational Guidelines

Plaintiff argues that the ALJ erred when he failed to consult a vocational expert. Dkt. No. 10 at 24. Defendant argues that the ALJ made no such error in this regard. Dkt. No. 12 at 10.

Because the Court is recommending remand for several reasons, the Court recommends

remand on this issue as well.  Upon remand, the ALJ shall obtain the opinion of a vocational expert if Plaintiff's nonexertional limitations present significant limitations.  *See Bapp v. Bowen*, 802 F.2d 601, 605-06 (2d Cir. 1986) (holding that if a claimant's nonexertional impairments "significantly limit the range of work permitted by his exertional limitations" the application of the grids is inappropriate).

**WHEREFORE**, for the reasons set forth above, it is hereby

**RECOMMENDED**, the Commissioner's determination of no disability be VACATED and the matter REMANDED to the agency for further consideration.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: August 12, 2010
      Syracuse, New York

George H. Lowe
United States Magistrate Judge